## Commonwealth v. Putterman

448

*John Deutsch*, Assistant District Attorney, for Commonwealth.

*Martin H. Philip* and *Arnold Sousa*, for defendant.

HEIMBACH, P. J., August 6, 1964. — On March 15, 1964, the above named defendant, according to an information filed before Justice of the Peace Harry E. Heydt in Penn Forest Township, Carbon County, Pa., was operating his motor vehicle at a speed of 82 miles per hour in a 65-mile per hour zone on the Pennsylvania Turnpike, in said township. Hearing was waived on the charge of speeding and the matter came on before us for hearing.

Before taking testimony defendant moved to quash the information for the reason that a return receipt card showed the address of Harry E. Heydt to be Star Route, Jim Thorpe, Pa., while the information set forth that he was a magistrate in Penn Forest Township. We dismissed such reason as being without merit.

The Motor Vehicle Code, sec. 1202, 75 PS §1202, does not require a return receipt card to be returned to the magistrate. It requires only that notice of the filing

of the information be given by registered or certified mail to the person charged with the offense. Thus any address of the sender shown thereon would be immaterial. In the instant matter the notice required by such section does set forth that the postoffice address of the justice of the peace is Star Route, Jim Thorpe, Penn Forest Township, Pa., which, of course, disposes of the matter. We likewise could have stated as a reason for dismissing that any defect in the notice to appear would be a procedural irregularity, which would not affect the justice's jurisdiction: Commonwealth v. Coldwater, 176 Pa. Superior Ct. 283.

We proceeded to take testimony. The prosecutor testified that he pursued defendant in Penn Forest Township, Carbon County for 10 miles and clocked him for 1 mile at a speed of 82 miles per hour in a 65-mile per hour zone. Evidence of speedometer accuracy was received. He likewise testified that he preferred the speeding charge against defendant before Squire Heydt, whose office was nearest to the situs of the offense, via an emergency gate at the Hickory Run service station, and being at mile post 66.1. He stated that this gate is used by State Police, maintenance men, employes of the service station, ambulance, etc.

Defendant in substance testified that it was his opinion that he was not driving in excess of 65 miles per hour. Although we were favorably impressed by defendant, his opinion must give way to fact.

On the basis of the evidence, we having found the State policeman to be a credible witness and not a perjurer, the Commonwealth has carried its burden and we will find defendant guilty unless defendant's motion to quash the proceedings for lack of jurisdiction of Justice Heydt is sustained.

Defendant's motion in substance sets forth that Justice of the Peace Heydt is not the nearest available magistrate to the situs of the offense, but Justice of

the Peace Sanute is. Section 1201 of the Motor Vehicle Code, 75 PS §1201, provides that an information charging any violation upon a turnpike under the supervision of the Pennsylvania Turnpike Commission shall be brought before a magistrate within the county where the violation occurred who is nearest in either direction to the first exit or interchange or emergency exit from that part of the turnpike or highway where the alleged offense occurred. Defendant says the nearest exit gate to the situs of the offense is the Pocono Interchange and that Justice of the Peace Sanute's office is considerably nearer to such exit than is Squire Heydt's. He says that the gate at Hickory Run service station is not an emergency exit as is contemplated by section 1201, supra, and predicating distances to respective magistrates' offices from such gate is error. He concedes that the office of Justice of the Peace Heydt is closer to such gate than is any other magistrate's office. He likewise concedes that the alleged offense took place nearer to the gate at Hickory Run service station than to the Pocono Interchange exit.

Thus, in disposing of the motion, the sole question before us is whether the gate at the Hickory Run service station is an emergency exit as contemplated by the act. Defendant attached to his motion the following letter received from the Pennsylvania Turnpike Commission; we will treat such letter as though it is properly before us, which, of course, it is not:

"Commonwealth of Pennsylvania
PENNSYLVANIA TURNPIKE COMMISSION
P. O. Box 531
Harrisburg

Office of
Director of Operations
July 16, 1964
Martin H. Philip, Esq.
252 Delaware Avenue

Palmerton
Pennsylvania      18071
             In re: Your File No. 11190
Dear Sir:

In reply to your letter of July 6, 1964, concerning emergency exits on the Northeastern Extension of the Pennsylvania Turnpike, please be advised that there are two locked vehicular gates located in the fence on the Pennsylvania Turnpike System between the Mahoning Valley Interchange at milepost A56 and the Pocono Interchange at milepost A74.7. The gate at milepost A66.1 is in the Hickory Run Service Station area and its primary purpose is to provide access to the service station area for service station personnel and delivery of supplies to the service station. Access to this gate is available to both north and southbound traffic through the service station area. The other gate is at milepost A67.1, located on the east side of the Turnpike, accessible to northbound traffic only. Patrons are not permitted to use these gates.

No formal declaration concerning these gates has ever been made by the Pennsylvania Turnpike Commission. Provision was made for them in the fence contract approved by the Commission. Their location was determined by the Chief Engineer. The Pennsylvania Turnpike Commission generally refers to these gates as access gates, while the Pennsylvania State Police, Turnpike Detail, refers to them as emergency gates.

                    Very truly yours,
                    /s/ F. V. Summers

                    FRANKLIN  V.  SUMMERS
                    Director of Operations"

The evidence on the part of the Commonwealth is that the Hickory Run service gate is not open to the

general public, but is used by the service station personnel and its suppliers, State Police, ambulances, maintenance men, etc. The letter of the commission in no way negates their testimony.

As far as we are able to ascertain, defendant's contention has been answered in three cases. Judge Sheely, in Commonwealth v. Jones, 1 D. & C. 2d 705, September 10, 1954, interpreted the word "exit", as used in section 1201 of The Vehicle Code, to mean only such exit as was open to the general public, i.e., interchanges. In Commonwealth v. Jones, 7 Chester 72, "exit" was interpreted to mean the first exit of any character, whether or not open to the general public. In Commonwealth v. Matthews, 17 D. & C. 2d 491, November 5, 1958, the court found as did Judge Sheely in Commonwealth v. Jones, supra, only because the offense charged occurred prior to the 1957 amendment of The Vehicle Code, when section 1201 provided that information charging violation upon the Pennsylvania Turnpike shall be brought before the available magistrate who is nearest to the first exit. The court stated that had the offense occurred after the 1957 amendment, which, inter alia, provided the information charging violation upon the Pennsylvania Turnpike shall be brought before the available magistrate who is nearest to the first exit *or interchange or emergency exit,* it would have found the magistrate nearest to the emergency exit and not the interchange would have had jurisdiction.

Following the 1957 amendment to section 1201 of The Vehicle Code, the Attorney General, in an opinion rendered to the Commissioner of the Pennsylvania State Police, Amendments to Vehicle Code, 14 D. & C. 2d 325, stated that the available magistrate was the one nearest in either direction to the emergency exit or the first exit or interchange from that part of the turnpike or highway where the alleged violation occurred. Judge

Shughart, in Commonwealth v. Rugh, 19 D. & C. 2d 781, followed such ruling.

It is of no concern that the Turnpike Commission refers to the gate at Hickory Run service station as an access gate. All gates are access gates, and included in this category would, of course, be an emergency gate. There is no provision in the Motor Vehicle Code nor the Northeastern Turnpike Extension Act of September 26, 1951, P. L. 1430, 36 PS §660.1, that requires a formal declaration by the Turnpike Commission of any gate as an emergency exit. We are satisfied that any gate leading to or from the turnpike right-of-way, other than gates at interchanges, are emergency gates under section 1201 of the Motor Vehicle Code, and so hold. The objection that Squire Heydt is not the nearest available magistrate is, therefore, without merit, and we enter the following

*Order*

And now, to wit, August 6, 1964, defendant's motion to quash the information is refused. We find defendant guilty of speeding at the rate of 82 miles per hour in a 65-mile per hour speed zone, and defendant is ordered to pay a fine of $10, the costs of the justice of the peace, and the costs of this appeal, within 10 days from the date hereof; otherwise to appear for sentence on August 21, 1964, at 10 a.m.